IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOY L. SULLIVAN,

        Plaintiff,

vs.

        Case No. 07-1140-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

    Plaintiff Joy Sullivan has applied for Social Security disability insurance benefits. Her application was denied by the Administrative Law Judge (ALJ) on September 29, 2006, a decision affirmed by the Appeals Council on April 20, 2007. There is one allegation of error by Sullivan – that the Commissioner violated S.S.R. 96-8p, 1996 WL 374184 and otherwise failed to reach a proper determination of her residual functional capacity (RFC) at step four.

    Plaintiff-claimant Sullivan has stated that she became disabled on June 30, 2004, citing a variety of ailments, including stress, hardening of the arteries, poor blood circulation, polymyalgia rheumatica, and the consequences of a prior cancer surgery. She was 57 years old at the time.

    Prior to her retirement, Sullivan worked in the Sedgwick County Courthouse for seventeen years. The ALJ concluded that Sullivan was capable of performing her past relevant work as an office specialist/election clerk. Specifically, the ALJ determined that Sullivan had the RFC to lift up

to 20 pounds occasionally, and to frequently lift or carry up to 10 pounds, that she could stand or walk up to 6 hours in an 8-hour workday, or sit for the same amount of time, and that she should not climb ladders, ropes or scaffolds, and should have no exposure to unprotected heights or be around dangerous moving machinery. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 18-23), and and set forth *seriatim* in the argument section of the briefs of Sullivan (Dkt. No. 10, at 4-21) and the Commissioner's response (Dkt. No. 16, 3-10).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that whether she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether

substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commisioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Sullivan argues generally that the ALJ erred in a variety of conclusions. She states that the ALJ erred in failing to consider the combined effect of her impairments (Dkt. No. 10, at 10), that the ALJ failed to consider the impact of her impairments on her ability to work on a "regular and sustained" basis under S.S.R. 96-8p, and that the ALJ wrongly decided that she could perform to the indicated RFC.

The court finds no error. The ALJ reviewed all of Sullivan's alleged impairments, and specifically stated that the RFC was based on the "entire record." (Tr. 20). Referencing 20 C.F.R. § 404.1527 and S.S.R.s 96-2p, 96-5p and 96-6p, the ALJ stated that his findings were based on "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 21). The ALJ's notation that Sullivan's "signs and symptoms of this disorder have waxed and waned" directly referenced her joint pains, and was linked to the December 23, 2004 report that Sullivan had ceased taking pain medication in May of that year so that "[c]urrently she is on no prescription pain medications." (Tr. 296). The ALJ's

finding that although Sullivan "may have had disabling symptoms for a short time during treatments, there has never been a 12-month period where she was disabled" is consistent with the law. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

With respect to step 4, the ALJ noted Sullivan's statements of pain in her left arm and joints, and tingling in her hands and fingers. However, he determined that these statements were less than fully credible.

> [T]he claimant was able to fill out the paper work to apply for disability without difficulty. The claimant was wearing a compression device on her left arm at the hearing. However, the record shows the claimant gardens. Her ability to garden indicates she is able to grip and pull with her hands. In addition, the record shows the claimant plays bingo and cards in her spare time that also shows an ability to use her fingers and hands. Examination notes of the claimant's treating physician on May 4, 2006, support her ability to use her upper extremities. The claimant had good range of motion in the shoulder, elbows, wrists, and small joints of the hands with mild bony enlargement in the PIP and DIP joints. However no synovial thickening was seen in the MCP, PIP, or wrist regions. There was slight lymphedema in the upper extremities.
>    [T]he record reveals she takes no prescribed pain medication. The record also reveals that the claimant has been taken off prednisone because the polymyalgia rheumatica improved. The claimant testified that she can not walk far. The claimant testified that maybe she could walk a block. However, the record shows she has a stable gait and station, does not use an assistive device and has no trouble heel or toe walking. Additionally, the claimant's treating physician noted that she had good range of motion in the hips, and knees, and ankles. She had no swelling in any of those regions. She takes only over the counter ibuprofen. The claimant's complaints of disabling joint pain are not credible.

(Tr. 22) (exhibit references omitted).

Sullivan argues that the ALJ erred in his reliance on various facts in his opinion, including the facts that she did some gardening, completed lengthy forms, and was able to sit through a 40 minute hearing without any visible discomfort. Sullivan seeks to minimize each of these factors. But individually they are appropriate and relevant considerations, and collectively they (together with the other circumstances in the case) provide substantial evidence to support the ALJ's decision. The observation that Sullivan sat without apparent difficulty was a legitimate element of this analysis. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (holding that such personal observation is a legitimate and relevant consideration for the ALJ's credibility assessment, "[a]lthough the ALJ may not rely solely on [such] observations"). Sullivan reported that she engages in various social activities as well as "landscaping," although she has to do this "more slowly" and "less frequent[ly]" than before. (Tr. 104). When Sullivan was treated on May 29, 2004 for swelling following a snake bite, the Consultation Report indicates that the incident occurred when Sullivan "was gardening around her house." (Tr. 348). The ALJ accurately noted the medical evidence supporting his findings. (Tr. 296, 313, 423).

Sullivan argues that the ALJ, who found that Sullivan could use her hands for grasping and using her fingers, erred in discounting the opinion of Dr. Timonthy Shaver. Plaintiff submitted an October 11, 2006 statement prepared by her counsel, to which Dr. Shaver assented, stating that Sullivan would be limited in her grasping and finger abilities by the need to "pace such activities." (Tr. 470). This statement was prepared after the ALJ's opinion in September of 2006. Further, as the Appeals Council noted, the statement of Dr. Shaver is not tied directly to any recent examination or based on recent treatment notes. A treating physician's opinion may be properly discounted by

5

the Commissioner where not supported by contemporaneous office records. *Hayes v. Callahan*, 976 F. Supp. 1391, 1395 (D. Kan. 1997).

Next, the plaintiff correctly notes that the ALJ's opinion includes a misstatement as to when the hot flashes she cited first occurred. She points out that this was actually in 2000 rather than 1991. The ALJ determined that the hot flashes were not disabling because Sullivan was able to continue working even after their onset. He wrote:

> The claimant testified that she has hot flashes at night that cause fatigue. This causes good and bad days, according to the claimant's testimony. However, she also testified that she has had these hot flashes since she was diagnosed with cancer which required that she quit taking hormone pills, according to the claimant's testimony. The claimant worked for 13 years after being diagnosed with cancer (1991), except during her treatment. The claimant stated her last date of work is June 30, 2004. Her ability to work many years with hot flashes causing fatigue is evidence that her fatigue is not currently disabling. In addition to working, the claimant reported that she visited friends and family, played cards, played bingo and shopped (Exhibit 5E, p.5).

(Tr. 22). The ALJ's decision in this respect was not predicated on the precise dates involved but on Sullivan's ability to continue working notwithstanding the alleged additional fatigue. Further, Sullivan's ability to continue working for a substantial time after the onset of the alleged hot-flash-induced fatigue is one element of the ALJ's general credibility assessment as to Sullivan's contention of disabling fatigue.

> The ALJ further noted:
>
> The record reflects that she gardened as well. The claimant's complaints of disabling fatigue are not credible. The claimant, while alleging disabling pain and fatigue for which she takes no prescription pain medication, also testified that she has taken retirement from her long time job registering voters at the Sedgwick County Court House for 17 years. She testified that she is receiving retirement benefits. Evidence supports that the claimant was upset over changes in her work place including a new supervisor that played into her decision to retire (Exhibit 24F, p.16). The record shows that the claimant was very upset and concerned over money she had spent that

>she believed put her retirement plans with her spouse at risk. (Exhibit 24F, p.I8). The claimant appears to have some motivation other than disability for receiving benefits.

(Tr. 22-23). The ALJ concluded that Sullivan's impairments reasonably could be expected to produce some of her symptoms, but that the her statements as to "the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 23).

Sullivan also contends that the ALJ erred in noting that she had retired from a long term job, drawing benefits, and was upset over the actions of a new supervisor, and speculating that she was merely interested in receiving disability benefits. She stresses the degree of conflict with her supervisor, stating that is what ultimately caused her to be treated for anxiety and depression.

The court finds that the ALJ's credibility analysis was not in error, and that the various elements of that assessment not only were based on substantial evidence, but were fair comments based upon that evidence. Each element of that assessment was a relevant part, if not controlling in itself, of the review of Sullivan's credibility. For example, the Progress Notes from her December 6, 2005 counseling visit include the notation that "[w]hen she was working there were many changes as a result of changes in supervisors, [and] she was unable to cope with the changes and this was part of her decision to retire." (Tr. 453). The ALJ also correctly noted Sullivan's financial concerns arising from her retirement. An Intake report at the same counseling center indicates that Sullivan apparently told the personnel there about "many regrets" she had about "poor decisions in the last few months." (Tr. 455). She explained that these decisions included

>buying a new bed which she says costs too much–this an attempt to resolve the pain in her back. They bought a new car, she says they would need one but not at this time. She and her husband own the semi he drives which was very expensive. As a result they had to refinance their house, now have a 100,000 loan for 30 years. She believes their dreams for retirement have been ruined.

*Id.* An ALJ may appropriately note indications in the record that a claimant has ceased work for reasons other than disability. Taken as a whole, the court finds no error in the ALJ's credibility assessment in light of the evidence in the record.

Sullivan next argues that the ALJ's opinion violated S.S.R. 96-8p, 1996 WL 374184, which sets for standards for the assessment of a claimant's RFC. The ruling provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.
> ....
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).

*Id*. at 1, 7. Sullivan argues that the ALJ failed to make a specific analysis of her condition, and that his assessment of her credibility was erroneous because it failed to note her history of long and steady employment.

Certainly such circumstances may buttress a claimant's credibility, *Archer v. Apfel*, 66 Fed.Appx. 121, 2003 WL 21186348 (9th Cir. 2003), but Sullivan has shown no error. An ALJ reviewing a claimant's credibility need not review specifically each and every potentially relevant fact as to the issue. *Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1260 (D. Kan. 2002).

As noted earlier, Counsel for Sullivan submitted additional statements from Dr. Shaver (R. 469) as well as Dr. V.C. Reddy (Tr. 472) to the Appeals Counsel. The Appeals Council decided not to consider them since they were not accompanied by neurological testing or records. The Council determined that the additional submissions were not entitled to controlling weight and had only limited probative value. Dr. Reddy wrote that Sullivan was seeing a neurosurgeon for her cervical

8

disk disease, and that was likely the cause of her hand numbness. However, no supporting evidence as to such medical treatment was submitted.

Sullivan argues now that the Appeals Council erred in failing to give these statements controlling weight, stating that even if there was an absence of corroboration of the neurosurgical impairments, the statements also pointed to other impairments, including myofascial pain and peripheral neoropathy in her feet, or that it should have more fully developed the record. She contends that the Appeals Council inaccurately cited the medical evidence in support of its conclusions.

The Council wrote that it had

> considered the statement of Dr. Reddy indicating that you have progressive lower extremity peripheral neuropathy that interferes particularly with walking and standing; you cannot ambulate effectively even in a parking lot, especially at a normal pace; you need the option to alternate between sitting and standing; you cannot frequently stand or sit 8 hours in total in an 8 hour workday; and your pain and fatigue would be expected to interfere with your concentration. Additionally, Dr. Reddy indicated cervical disk disease is the likely cause of your hand numbness and you are seeing a neurosurgeon for this problem. However, no neurological testing or records were submitted. Additionally, as indicated in the decision (Pages 3, 4, 6 and 7) you can ambulate effectively, use your upper extremities effectively and there is no evidence of any extended period of a significant mental impairment. The Council considered Dr. Shaver's statement indicating your symptoms and "possible" elements of degenerative arthritis and his thinking that the main problem with your feet is peripheral neuropathy. However, as indicated above, neurological testing/related records were not submitted, despite your being seen by a neurosurgeon. The Council considered Dr. Shaver's statement that he has not described pain medication because it is not appropriate for medical reasons to prescribe pain medication for chronic conditions such as yours. The Council agrees that over prescription of pain medication, or any medication, is inappropriate. However, if you had the pain alleged it would appear that at least some pain medication would be prescribed. The Council also notes that Exhibit 24F/3 and 18 indicates that you went out with your husband, a long distance truck driver, on the truck for a week and hoped for another week but did not go due to a death in the family. It would appear that if you were as limited as you allege and as indicated by Drs. Reddy and Shaver, you would avoid sitting anywhere for long periods and would stay in close proximity of your care providers,

>   instead of spending long hours in a truck when such is not necessary. Therefore, the Council concluded that the statements from Drs. Reddy and Shaver are not entitled to controlling weight and have limited probative value.

(Tr. at 7).

The court finds no error in the Appeals Council's conclusions as to the additional submission. As noted earlier, the failure of a treating source to premise his or her opinions on contemporaneous medical findings or tests or with the overall objective medical record is a legitimate basis for discounting the weight of such opinions. *See Hayes v. Callahan*, 976 F. Supp. 1391, 1395 (D. Kan. 1997). Here the original medical notes of the two sources show more limited symptoms. In visits during the latter part of 2004, Dr. Reddy noted Sullivan's gait and knee motion were unremarkable. (Tr. 331, 333). In early 2005, Dr. Reddy noted that although Sullivan complained of pain there was "[n]o evidence of join inflamation at this time," and the following month stated that "except for some joint pains and body aches" she "feels fairly well," (Tr. 329). Dr. Shaver also noted in a May 4, 2006 follow-up visit for polymyalgia rheumatica that this condition "is not essentially in remission." (Tr. 423). He reported that Sullivan had "good range of motion in the hips, and knees, and ankles," and also in "the shoulders, elbows, wrists, and small joints of the hands." (*Id*.) These facts, coupled with the Appeals Council's accurate references to evidence showing an absence of prescription pain medication and Sullivan's ability to endure the rigors of a long truck ride provided adequate support for the Council's decision to limit the weight of the submissions tendered by the plaintiff.

IT IS ACCORDINGLY ORDERED this 29th day of September, 2008, that the present appeal is hereby denied.

                                              s/ J. Thomas Marten  
                                              J. THOMAS MARTEN, JUDGE